FILED 19 AUG '24 10:18 USDC-ORP

JONATHON CARTER
AO #3026126
700 Conley Lake Road
Deer Lodge, MT  59722

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JONATHON CARTER<br><br>    Plaintiff, PRO SE,<br><br>v.<br><br>J. HIGHBERGER, et al.<br>    Defendant. | Case No.: 6:23-cv-01664-CL<br><br>COMPLAINT, AMENDED |

COMES NOW JONATHON CARTER, Plaintiff Pro se, a state prisoner, in this civil rights action for damages and injunctive relief under 42 U.S.C. § 1983, alleging cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, for violation of the Interstate Compact Agreement, violation of confinement requirements including placeent in knowingly dangerous, abusive, and harmful environments, and misuse of force in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The plaintiff also alleges the tort offenses against the person, including sexual harassment, aggravated assault and battery, breach of duty and negligence. The plaintiff also alleges intentional neglect and infliction of emotional distress in violation of conduct required under the Americans with Disabilities Act of 1980(ADA). Plaintiff also alleges that the defendants at all times mentioned in this complaint were acting under color of state law and are being sued in their official and individual capacities. Plaintiff also alleges violations of his Fourth Amendment right to be free from unlawful search.

1

## JURISDICTION & VENUE

This is a  civil action authorised by 42 U.S.C. Sectiona 1983 to redress the deprivation, under color of state law, of the rights secured under the Consitution of the United States and the Americans with Disabilities Act of 1980(ADA). The court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. PLaintiff claims for relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

The United States District Court, District of Oregon is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is  where the events giving rise to this claim occurred.

## PLAINTIFF

Plaintiff, Jonathon Carter, is and was at all times mentioned herein a prisoner of the State of Montana in the custody of the Oregon Department of Corrections. Plaintiff was returned to the custody of the State of Montana and and confined in Monatan State Prison as of January 28, 2024, where he continues to be confined.

## DEFENDANTS

Defendant Marcia G. Ventura, is the Statewide Adult In Custody Americans with Disabilities Act Coordinator for the Office of the Inspector General of the Oregon Department of Corrections. She is responsible for the overall compliance with ADA requirements of the Department of Corrections and each institution under its jurisdiction, including Oregon State Correctional Institute.

Defendant Joshua Highberger is the Superintendant (Warden) of the Oregon State Correctional Institution(OSCI) of the Oregon Deparment of Corrections. He is legally responsible for the operation of OSCI and the welfare of all the adults in custody in that prison.

Defendant Heidi Steward is head of the corrections department and is the Directof of the State of Oregon Department of Corrections. She is legally responsible for the overall operation of the department and each institution under its jurisdiction, including the Oregon State Correctional Institution.

Defendant Christy Hutson is the Behavioral Health Services Administrator for the Oregon Department of Corrections. She is legally responsible for the overall operation of the Department and Behavioral HealthiServices staff in each institution, including Oregon State Correctional Institution.

Defendant R. Corrigan is the Grievance Coordinator and Institution ADA Coordinator for the Oregon Deparment of Corrections institution Oregon State Correctional Institution. She is legally responsible for the Grievance and ADA departments, including communicating with adults in custody about the status of their greivances and ADA concerns within the Oregon State Correctional Institution.

Defendant Kristine Gates is the Behavioral Health Services Manager for the Oregon Department of Corrections institution Oregon State Correctional Institution. She is legally responsible for the mental health programs, care, and concerns of adults in custody at Oregona State Corrrectional Institution.

Defendant O'Brien is a case manager for the Oregon Department of Corrections who, at all times mentioned in this complaint , held the title of counselor and was assigned to Oregon State Correctional Institution.

Defendant Stevenson is a correctional officer of the OregonaDepartment of Corrections who, at all times mentioned in this complaint, held the rank of Lieutenant and was assigned to the Security Thireat Management Group at Oregon State Correctional Institution.

3

Defendant Alves is a correctional officer of the Oregon Department of Corrections who, at all times mentioned in this complaint, held the rank of Sergeant and was assigned to Oregon State Correctional Institution.

Defendant Ken Jeske is the Westside Institutions Administrator for the Oregon Department of Corrections who, at all times mentioned in this complaint, held the position of supervisor or administrator over the Oregon State Correctional Institution.

Defendant Would (?Ward?) is an officer of the Oregon Department of Corrections who, at all times mentioned in this complaint, hed the title of Housing Assignment Officer and was assigned to Oregon State Correctional Institution.

Defendant Miss Meyer is a mental health counselor for the Oregon Department of Corrections and licensed by the State of Oregon as a Qualified Mental Health Counselor and employed by the Behavioral Health Services of the Oregon Department of Corrections and who, at all times mentioned in this complaint, held the title of mental health counselor and was assigned to the Oregon State Correctional Institution.

The Oregon Department of Corrections is also listed as a defendant who, at all times mentioned in this complaint, was the supervising body in charge of ensuring the Constitutional rights of the plaintiff were not violated, ensuring plaintiff's rights under the Americans with Disabilities Act are followed, that the Interstate Compact Agreement was adhered to, and that all laws, rules, and regulations were upheld and enforced such that plaintiff would never be subject to the blatant and egregious violations of plaintiff's rights as outlined in this Amended Complaint.

Defendant Aysa is a correctional officer of the Oregon Department of Corrections who, at all times mentioned in this complaint, held the rank of Captain and was assigned to Oregon State Correctional Institution.

Defendant Jones is a correctional officer of the Oregon Depatment of Corrections who, at all times mentioned in this complaint, held the title of Operations Coordinator and the rank of Captain and was assigned to the Oregon State Correctional Institution.

Defendant Ross is a correctional officer of the Oregon Department of Corrections who, at all times mentioned in this complaint, held the rank of Captain and was assigned to the Oregon State Correctional Institution.

Defendants may include other correctional officers and personel of the Oregon Department of Corrections who, at all times mentioned in this complaint, held various ranks and positions and were assigned to  Oregon State Correctional Institution.

Other defendants may be included if and when uncovered during the discovery process or investigations, including defendants discovered to be working for Montana DOC. Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint, each defendant acted under the color of state law.

FACTS

The Oregon Department of Corrections violated plaintiff's Eighth and Fourteenth Amendment rights by Denial of Due Process, Denial of Mental Health Care, and Misuse of Force by creating policies and procedures, and hiring staff which allowed the egregious acts against plaintiff to occur, and lead to the violation of the interstate compact,and violation of plaintiff's ADA rights.

5

Violations of the interstate compact agreement with the sending state of Montana include lact of treatment for major depression, bipolar disorder, chronic PTSD, anxiety, stimulant, opiod, cannabis, and alcohol use disorder, unspecified personality disorder, and head trauma. Oregon Department of Corrections is directly responsible for hiring staff which did not abide by the interstate compact which gives plaintiff any and all privileges which a Montana State inmate would have under the Langford Settlement Agreement, and Disability Rights of Montana, and all MCA statues, and any other laws and  related material related to the contract between Montana DOC and Oregon DOC, to include 46-19-301 MCA, Western Interstate Corrections Compact. Of note the WICC states in part under Article IV. Procedures and Rights section

(5) "All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be cared for and treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

(1) Clearly states Oregon is to ensure they do whatever is"necessary in order to provide adequate quarters and care [the inclusion of the words "or desireable" here would appear to be a typo] in order to provide an appropriate program of rehabilitation or treatment,."

(8) "Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits, incur or be relieved of any obligations, or have such obligations modified or the inmate's status changed on account of any action or proceeding in which the inmate could have participated [in] if confined in any appropriate institution of the sending state."

Plaintiff alleges that exhibits are available to establich the facts in the complaint, however the cost of photocopying the volume of exhibits available far exceeds the funds plaintiff has available and is one of the reasons plaintiff is requesting the court appoint counsel.

6

Defendant Heidi R. Steward, Director of the State of Oregon Department of Corrections, violated paintiff's Eighth Amendment rights by allowing cruel and unusual punishment of plaintiff after being made aware from multiple sources of plaintiff being in situations harmful to plaintiff's mental, physical, and emotional health. Steward also violated plaintiff's Fourteenth Amendment due process rights by depriving plaintiff's liberties as outlined in the interstate compact agreement. Steward also violated plaintiff's ADA rights by leaving plaintiff in dangerous environments thereby exacerbating his mental, physical, and emotional health concerns. Steward did not take necessary steps to intervene and provide necessary direction to staff and guards she supervises as Director of the State of Oregon DOC. Instead of corrective action Steward took no apparent action to amend the violations of plaintiff's ADA, Eighth Amendment, and Fourteenth Amendment rights. Specific actions and dates will be discussed in the EVIDENCE section.

Defendant Ken Jeske, Westside Institutions Administrator, Oregon Department of Corrections, violated plaintiff's Eighth Amendment rights by not taking action to prevent plaintiff being placed in dangerous situations that Jeske had been made aware of, therefore causing plaintiff to suffer cruel and unusual punishment. Jeske's lack of intervention to remove plaintiff from dangerous situations causued plaintiff to suffer cardiac complications. By not responding appropriately to plaintiff's efforts to obtain relief from harm, Jeske also violated plaintiff's right to equal protection under the Fourteenth Amendment, and plaintiff's First Amendment right to be heard. Jeske also violated plaintiff's rights under the American's with Disabilities Act by allowing plaintiff to be placed in conditions detrimental to the needs related to his disabilities. Jeske also did not ensure plaintiff's interstate compact conditions were followed and alleged ODOC & OSCI policies and procedures adhered to.

The lack of intervention by Defendant's Steward and Jeske, and their knowing violations of the interstate compact agreement with Montana set up a dangerous and egregious pattern of violations of plaintiff's constitutional and ADA rights which other administrators, staff, and guards followed without retribution or even redirection.

Defendant Marcia G. Ventrua, the Statewide Adult In Custody Americans with Disabilities Act Coordinator for the Office of the Inspector General of the Oregon Department of Corrections violated plaintiff's Eighth Amendment rights by allowing plaintiff to suffer cruel and unusual punishment after allegedly being made aware of violation of plaintiff's rights under the Americans with Disabilities Act which exacerbated plaintiff's mental, physical, and emotional health concerns.

Defendant Christy Hutson is employed by the Oregon Department of Corrections Health Services Division as the Behavioral Health Services Administrator over the Oregon State Correctional Institution Behavioral Health Services staff who are responsible for plaintiff's diagnosis and treatment, including regularily scheduled therapy visits within the Oregon State Institution. Defendant Hutson was made aware of the disparity of claims regarding plaintiff's mental health treatment and treatment of plaintiff's addictions. Without ever engaging plaintiff in her minimal investigation she took her staff, guards, and QMHP's word that plaintiff was not attending treatment. It seems obvious and is believed that Hutson never reviewed plaintiff's kites or other documents to verify plaintiff's side of the story. It is known by plaintiff and he believes that his sister called Hutson and asked her if she wanted his entire mental health records in a message but never got any reply. Defendant Hutson's lack of action must indicate she never reviewed plaintiff's mental health and other records because plaintiff believes that had she done so any reasonable administrator would have taken some kind of action to see that plaintiff's mental health and treatment needs were better met. If Defendant Hutson in fact did receive the message from plaintiff's sister and in fact did review plaintiff's mental health and treatment records, with the knowledge she was to have of his interstate compact agreement then plaintiff can find no other way to describe her lack of even the most remedial of action most egregious. Knowing significant efforts were made on the part of the plaintiff to make defendant Hutson aware of the violations of plaintiff's rights, it seems her inaction is most egregious. Hutson's actions violated plaintiff's First, Eighth, Fourteenth, and ADA rights.

Defendant Alves, a correctional officer of the Oregon Department of Corrections who held the rank of sergeant and was assigned to the Oregon State Correctional Institution and the unit where plaintiff was housed. Defendant Alves Defendant Alves violated plaintiff's First, Eighth, and Fourteenth Amendment rights by cruel and unusual punishment, denial of freedom of speech, and denial of due process. Defendant Alves also violated plaintiff's Fourth Amendment right by performing unreasonable strip search in retaliation for the superintendent, J. Heighberger. On 09/15/2023 plaintiff wrote a grievance against Highberger and sent it out on 9/18/2023 as Grievance #OSCI 2023-09-055. In the grievance plaintiff stated numerous unconstitutional acts superintendent J. Highberger was allowing to happen to plaintiff while incarcerated at Oregon State Correctional Institution. The very same night Sgt. Alves came to plaintiff's cell, it was approximately 7:30pm, and took him out of his cell without allowing him to put his shirt on. Defendant Alves proceeded to walk him to "the hole" where he interrogated plaintiff about drugs as defentant Alves stated in his declaration. Defendant Alves shackled him to the wall and stripped plaintiff naked and interrogated plaintiff while he was naked. Afterwards Alves told plaintiff to put his cloths on and unshackled plaintiff from the wall. Next Sgt. Alves stated he was going to search plaintiff's cell yet plaintiff believes his cell was never searched because of the brief duration of time Sgt. Alves was gone and because plaintiff noted that it appeared to him Sgt. Alves hadn't touched or disturbed anything in plaintiff's cell. I must be noted that Sgt. Alves never gave plaintiff a urine drug screen which is mandatory when investigating an AIC for possible illicit drug use. It also must be noted that plaintiff still did not have a t-shirt to provide adequate clothing coverage which is especially concerning as Sgt. Alves knew he was dealing with an AIC who identifies as nonbinary. Plaintiff still had no shirt to wear when he was permitted to exit DSU, or "the hole" when he ran into Miss Singleton and Mr. McBeth who gave plaintiff a t-shirt to wear for his return to Unit-1. Outside Unit-1 plaintiff was again confronted by St. Alves plaintiff he had a "nice body for an older man." Plaintiff felt sexually harrassed.

OregonAdministrative Rules(OAR) 291-042-0035 #2(a) states that in 100% of cases when there is suspicion that an AIC is using substances of abuse, a [urine] specimen shall be obtained. Plaintiff never was given a urine drug screen and a cell search was  never believed to have been done.

Defendant violated plaintiff's Eighth Amendment rights by harrassing him and threatening him in the halls of Oregon State Correctional Institution on 12/20/2023. Defendant Alves came walking up to the plaintiff and got within about four inches of plaintiff's face at a time when no other guards or staff were in the area and was saying "what" in a violent and menacing way (see security video coverage of the event. The video coverage would be available from OSCI it seems).

Defendant Alves further violated plaintiff's First, Eigth, and Fourteenth Amendment rights by housing plaintiff with AIC King in an effort for Alves to have AIC King convince plaintiff to drop the lawsuit he had against defendant Alves. Defendant Alves wanted plaintiff to blame two other officers, officers which defendant Alves did not like. Detective Alves is believed to have been convinced the two other officers were responsible for getting plaintiff to file the lawsuit against Sgt. Alves. Plaintiff was told by AIC King that if plaintiff dropped the lawsuit against Alves and said instead that it was the two other officers which defendant Alves did not like who did the menacing and egregious acts to plaintiff, then Sgt. Alves would do a favor for the plaintiff. In short, AIC King repeated Alves' offer to go in front of the parole board for plaintiff like he had previously done for AIC King. Plaintiff was told defendant Alves has a lot of pull with the parole board and that Sgt. Alves could make it possible for plaintiff to get back to Montana.

At one point there was enough concern about defendant Alves actions that he was reportedly taken out of Oregon State Correctional Institution in handcuffs and a large investigation of Alves actions was done. Plaintiff believes the hearsay but cannot verify the story and it has not provided any known benefit to plaintiff. The investigation was reportedly #240157 and done by Kristen Livingston.

Defendant Kristine Gates is the Behavioral Health Services Manager for the Oregon Department of Corrections and over the mental health program for adults in custody in the Oregon State Correctional Institution. Defendant Gates violated plaintiff's Eighth Amendments rights by allowing cruel and unusual punishment, and plaintiff's Fourteenth Amendment due process rights. It has been said that you can't claim ignorance when it is within your job, or the policies and procedures of your job for you to know. Plaintiff believes the saying applies to defendant Gates. Defendant Gates is a licensed and certified professional counselor with the State of Oregon. She is the Behavioral Health Services manager at OSCI. Plaintiff filed a lawsuit in the United States District Court For The District of Oregon, Case No.: 6:23-cv-01664-CL and will include the Declaration of Krinstine Gates, now Kristine Tschopp, dated January 16, 2024 as evidence. In defendants declaration she makes numerous claims trying to show her lack of involvement in defendants housing and changes in diagnosis and mental health care. Defendant Gates states that plaintiff was known to be refusing mental health treatment when plaintiff has evidence to support his claims that he was not being called out to his mental health appointments, and those kites will be included in the Evidence section. Plaintiff came to Oregon Department of Corrections' Oregon State Correctional Institute from the Montana Department of Corrections' Montana State Prison facility where he had been housed since April 5th, 2019. Plaintiff came to OSCI with various mental health diagnoses including: Major Depressive Disorder, recurrrent; PTSD, Chronic, history; Stimulant, opiode, cannabis, and alcohol use disorder; Unspecified Personality Disorder; and Head trauma. Defendant Gates changed plaintiff's mental health diagnoses simply to PTSD. The Interstate Compact Agreement between the sending state of Montana and the receiving state of Oregon states, "the receiving state[is]to act in the regard solely as the agent of the sending state.""It is necessary in order to provide adequate quarters and care or desirable in order to provide an appropriate program of rehabilitation

or treatment." Plaintiff's rights to include mental health care include that
"The fact of confinement in a receiving state shall not deprive any inmate so
confined of any legal rights which said inmate would have had if confined in an
appropriate institution of the sending state." These legal rights would include
the legal right to appropriate mental health care based on the sending states'
evaluations and diagnoses, and the drug and alcohol treatment which Oregon was
required to provide plaintiff based on his drug and alcohol use disorder diagnosis
in Montana. Just because plaintiff was in a controlled environment does not mean
that the substance use disorder in his evaluations is invalid and does not require
treatment while incarcerated. Plaintiff believes it is possible that the lack
of diligence to ensure plaintiff's interstate compact was followed and that
plaintiff received the mental health and addiction treatment and level of service
set out as standards of care under the Constitution and ADA and Interstate Compact
Agreement shows deliberate indifference on the part of defendant Gates, causing
him irreversible harm. Further elaboration will be included in the EVIDENCE and
HARM sections later in the complaint. Plaintiff is still not able to get the
treatment which could have been provided during his incarceration at Oregon State
Correctional Institution which will further delay his rehabilitation and successful
return to the community as a rehabilitated person.

Defendant J. Highberger is employed by Oregon Department of Corrections and
hold the title of Superintendent of Oregon State Correctional Institution. Defedant
Highberger violated plaintiff's First Ammendment right to freedome of speech by
retaliating against plaintiff in response to grievances fild. Defendants actions
violated plaintif's Eighth Amendment right to be free from cruel and unusual
punishment, and plaintiff's Fourteenth Amendment right to due process and denied
his liberty interest and freedom to move within the facility according to plaintiff's
status and mental health and treatment needs, and in accordance with the Interstate

Compact Agreement with Montana, as well as plaintiff's rights under the Americans with Disabilities Act. As Superintendent defendant cannot claim a lack of action due to not being aware of the violations of plaintiff's rights, i.e., ignorance.

As stated earlier Defendant Highberger cannot simply claim ignorance when it is his job and within his job description and the policies and proceedures of ODOC and OSCI for him to know what is happening to those incarcerated within his facility. It becomes even more egregious for him not to act, and to act in a retaliatory manner, when he was made aware of the egregious acts within his facility of OSCI through multiple sources of information. Plaintiff will show multiple sources of evidence in the EVIDENCE section of this amended complaint and further expound upon the harm done by defendant Highbergers actions and lack of action. Defendant violated plaintiff's Eighth Amendment rights by cruel and unusual punishment when he knowwingly had or allowed plaintiff to be placed in the same unit as a known active and violent gang member, Christopher Gonzalez, who had previously assaulted plaintiff. On numerous occasions defendant ignored or denied plaintiff's requests to be placed on a "keep seperate" status with Gonzales. Plaintiff started a personal fitness program for seniors at OSCI and worked at his job which was created as a result where he was a personal fitness instructor in the program plaintiff created. Defendant failed to see that plaintiff was able to return to his job. Defendant knew plaintiff was not getting yard time as outlined in the interstate compact agreement. Defendant knew that plaintiff was unable to attend yard because guards and other staff had warned plaintiff that if he did go out to yard he would be "jumped" by the gang members waiting to harm him at yard. The same events also prevented plaintiff from getting the dayroom time he was alloted to have, and he was also placed on units where he was unable to get the mandated dayroom time. Plaintiff had a crisis plan whereby he was to be able to go to the dayroom to decompress during times of mental stress and crisis and he was denied access at those times too which had a seriously negative impact on plaintiff's mental health.

The placement of plaintiff on units with known violent gang members violated plaintiff's interstate compact agreement. Repeated showing of a TV show putting plaintiff in a negative light while he was incarcerated in OSCI for acts he did prior to incarceration further exacerbated the danger plaintiff was needlessly exposed to while at OSCI. The events of retaliation against plaintiff believed to be a direct result of plaintiff's grievances filed when it is believed defendant had Sgt. Alves strip search plaintiff without cause and without following demanding requirements in policy and procedures clearly violated plaintiff's Fourth Amendment rights by unreasonable and possible unlawful search. Retaliation by the defendannt nor any guard or staff in corrections is ever appropriate or lawful and also violates plaintiff's ADA rights based on his diagnostic profile and as a known and declared nonbinary person. Additionally plaintiff was placed in "the hole" the day prior to his scheduled parole hearing. Plaintiff was unable to be on the video conference for the parole hearing as detailed in the interstate compact agreement, and had to try to make sense of his parole hearing over an inadequately miked phone without any of his documentation and during an emotional breakdown due to the violation of his rights which he was certain would result in denial of his parole, which was the case. Defendant was aware that plaintiff was not getting the mental health and addiction treatment required by the interstate compact agreement further placing defendant in violation of the rights in the agreement, plaintiff's ADA rights, and his rights under the Constitution. Defendants most egregious lack of proactive action on behalf of the plaintiff, and defendants seemingly obvious acts of retaliation towards plaintiff have caused plaintiff irreparable harm mentally, physically, personally to his family life, and in unretrievable loss of time due to defendants conspicuous flagrant deliberate indifference to plaintiff's needs for treatment for the purposes of rehabilitation and restructuring his life so that plaintiff would be prepared to successfully reenter society in a successful and positive manner.

Defendant R. Corrigan is the Grievance Coordinator and Institutional ADA Coordinator for the Oregon Department of Corrections and is assigned to the Oregon State Correctional Institution. As the person legally responsible for the Grievance and ADA departments, she is acutely aware of all communication coming from the plaintiff in the form of grievances and requests for assistance with overcoming abusive and sexually aggressive staff, violent inmates, mental health needs, housing issues, requests for treatment for addictions, and the need to communicate with guards and staff at every level in the Oregon Department of Corrections and Oregon State Correctional Institution to successfully resolve the issues presented to her. As a part of her responsibilities she is believed to have been required to know about plaintiff's interstate compact agreeement and the conditions and regulations outlined therein. Again, it must be said that ignorance of the compact and plaintiff's needs and concerns is not an excuse for not doing what is a part of defendant's job and in the policies and procedures. Defendant violated plaintiff's freedom of speech and First Amendment rights by retaliating against plaintiff for filing grievances and expressing concerns about the conditions plaintiff was subject to while incarcerated in Oregon State Correctional Institution. Defendant also violated plaintiff's Eighth Amendment rights by her responses or lack thereof to the grievances, concerns, and needs expressed to defendant thereby subjecting or permitting plaintiff to suffer cruel and unusual punishment. Defendent also denied plaintiff's Fourteenth Amendment rights by denying him equal protection of the law and due process. Defendant denied countless grievances with no meritorious reasoning and logic not grounded in fact and law. On 06/05/2023 grievance number OSCI-2023-06-021 plaintiff brought up valid issues about his safety. Plaintiff's previous actions were being repeatdly played on the institutions "Court Cam" which put plaintiff in harms way and exposed him to violence by other AIC's. Plaintiff's valid concerns about his safety were denied on the grounds of "no more than 4 grievances a month" which may have been

a valid policy (plaintiff is uncertain of this point), but it was used in error
and with blatant disregard for plaintiff's safety concerns and Eighth Amendment
right to be free from cruel and unusual punishment, First Amendment right to
freedom of speech, and Fourteenth Amendment rights to due process and equal
protection of the law, and ADA rights. Defendant Coorigan repeated the same
actions with Grievance # OSCI-2023-06-017 where she denied plaintiff's greivance
against defendant Highberger for abuse on the grounds that only 4 grievances a
month are allowed to be filed. Again defendant knew of plaintiff's situation and
did nothing about plaintiff's concerns. Defendants denials continued without
any acknowledgment of AIC's concerns. On 06-05-2023 plaintiff filed Grievance
#OSCI-2023-06-016 on defendant Meyer for mistreatment of AIC. Again the grievance
was denied and the reason stated was that only 4 grievances were allowed to be
filed per month. On 05-23-2023 plaintiff filed Grievance 3OSCI-2023-06-008 on
the defendant Ms. Would (?Wold?), the assignment officer for placing defendant,
who is known to be vulnerable, into cells with active gang members. Defendant
Corrigan denied the grievance on the grounds that plaintiff did not show grounds or cause
for the grievance. On 06/01/2023 plaintiff filed Grievance #OSCI-2023-06-007
which was denied with the stated reason that plaintiff had not shown cause for
grievance when plaintiff showed the cause being her placement of plaintiff on
unit with active gang members, again from the same gang as Christopher Gonzales
who would not let plaintiff cell up with him. On 01-04-2024 defendant Corrigan
denied a grievance on defendant Sgt. Alves for sexual misconduct and abuse of
plaintiff. Defendant Corrigan claimed the grievance was time-barred because it
had been 14 days since the events in the grievance. However, there is not time-
bar on a sexual harassment grievance or claim without addressing the alleged
sexual harassment, plaintiff mental health and safety concerns, his emotional
needs under the First, Eighth, and Fourteenth Amendments, ADA rights, and
conditions of the interstate conpact agreement. Another grievance against

Sergeant Alves was filed on 12-20-2023 for threatening plaintiff in the hallway. Defendant Corrigan returned for correction stating that plaintiff did not demonstrate how it qualifies that he broke the rule, yet plaintiff states "I did." Plaintiff sent the correction and restated his claim clearly and defendant Corrigan still denied the grievance. Plaintiff filed a grievance on Christy Hutson for the reasaons stated on page 8 of this complaint and defendant denied the grievance again under the 4 grievances per month policy. Defendant Corrigan knew of the extreme situation and did nothing to help plaintiff in efforts made to get the mental health treatment and addiction treatment needs, and ADA needs were being met, and it must be noted again that defendant Corrigan is the ADA Coordinator for OSCI, see Grievance #OSCI-2023-10-062(ODOC) and #OSCI-2023-10-046(Gates harassing plaintiff), and countless other grievances. But a particularily egregious denial, if any could be worse then those already listed, is Grievance #OSCI-2023-10-044 against Captain Jones on 10/14/2023 for making a medical decisions for plaintiff's emergency medical needs based on legitimate and verified cardiac concerns. Plaintiff was at the far end of the tier where guards had told him previously that they could not hear him. Captain Jones responded on a written kite the plaintiff was on a tier with open bars and that if he needed emergency medical help all he needed to do was yell for it. On 05/03/2023 plaintiff was brought in to the clinic while crying and having a panic attack. On 09/18/2023 plaintiff had an EKG due to concerns that he might be having a heart attack. On 10/02/2023 plaintiff filed Grievance #OSCI-2023-10-038Aagainst OSCI Administration. Plaintiff was grieving "the lack of communication [that] comes with in the cells here at OSCI. It is extremely dangerous to not be able to communicate with staff during a[n] emergency. There is no way to get staff attention if htere is a "man down" situation. I do not feel this s[afety] i[s]sue should be taken lightly. I myself am now taking blood pressure pills and wearing a heart monitor. What if I have a

heart problem and die! Because I can't call for a guard. This situation is
extremely unconstitutional." Plaintiff went on to ask for an intercom device to
be placed in cells. Plaintiff's concerns and request for accommodations was
denied by J. Heighberger, OSCI Superintendent and defendant, Ken Jeske, Westside
Institutions Administrator and defendant, and the responses copied to R. Persson,
Assistant Director of Operations, as well as OSCI Grievance Coordinator Corrigan.
Plaintiff was seen in the OSCI clinic for panic attacks several times and often
felt as though he was having a heart attack or cardiac problems. These dates
include05/03/2023; 08/06/2023; 09/12/2023; 09/16/2023; 09/18/2023;and 10/15/2023.
Plaintiff had EKG's on 09/18/2023, and 09/16/2023 during those clinic visits.
On 09/25/2023 plaintiff was given a cardiac monitor to wear until 10/08/2023
which was significant for ventricular arhythmias including an episode of ventricular
tachycardia. Again, a grievance was filed, Grievance #OSCI-2023-10-044 against
Captain Jones on 10/14/2023 for making decisions of plaintiff's medical emergencies.
Defendant Corrigan denied the grievance on the grounds of only 4 grievances being
allowed per month. Plaintiff sent back a reply asking Corrigan which 4 grievances
had been sent that month, knowing only 3 had been sent. Defendant Coorigan sent
back a reply listing 4 grievances but plaintiff noticed that one grievance had
been backdated by Corrigan to make her claim, and she told plaintiff he needed to
be more organized. Plaintiff sent back another reply pointing outthe error and
asked to have grievvance #OSCI-2023-10-044 processed as requested. Defendants
reply stated plaintiff was wrong and he needed to review his records even though
plaintiff showed defendant her error, and then she denied plaintiff's grievance
again. Plaintiff has had numerous such other problems with other grievances with
very close to the same outcome and sites this as further evidence to support his
ammended complaint. Defendant Coorigan's apparent lack of concern for the needs
and concerns of the plaintiff, if based on policy, seem even more egregious.
Plaintiff's requests for mental health treatment and treatment of his substance
abuse are legitimate and further support the claims of this amended complaint.

Defendant Stevenson is a correctional officer of the Oregon Department of
Corrections with the rank of Lieutenant and assigned to the Security Threat
Management Group at Oregon State Correctional Institution. Defendant Stevenson
violated plaintiff's Eighth Amendment rights by failing to act on plaintiff's
safety needs. Gangmembers are called security threat groups and Lt. Stevenson
is in charge of all gang members and is to review and investigate suspected
security threats from active gang members and rival gangs. Plaintiff's file
held a complete description from his intake assessment outlinning in detail his
former security threat group involvement. Defendant Stevenson was also very aware
of plaintiff's past activities being repeatedly shown on the TV show Court Cam for
all to see and defendant knew how this would make plaintiff a target for threats,
violence, and retaliation while incarcerated at OSCI yet he did not take proactive
measures to prevent harm to plaintiff at the hands of other security threat group
members, or gang members. In fact, contrary to ORS 291-069-0270 and ORS 291-069-0230
Defendant Stevenson said there was nothing he could do to protect plaintiff from
the threats, harassment, and violence plaintiff suffered at the hands of gang
members while incarcerated in OSCI. In fact, defendant placed Christopher Gonzales
in the Unit "11" dorm as a level on active gang member who defendant had been told
was threatening plaintiff. On 09/08/2022 plaintiff was in fact assaulted by the
very gang member, Gonzales, that he had tried to get protection from and that
defendant knew was a threat to plaintiff's safety and meant to harm plaintiff.
Plaintiff tried "countless times" to place a "keep seperate" on Gonzales so they
would not be housed together yet even after that, and even after being assaulted
by Gonzales,plaintiff was housed on the same block as Gonzales and fellow gang
members. On 06/03/2023 plaintiff sent Stevenson a kite explaining his situation
and again telling Defendant Stevenson that plaintiff was on Court Cam TV, chanell
33, and labled as a rat and child abuser which placed him at a very high rist of
harm from not only gang members but a majority of AICs as well. Defendant

Stevenson already knew about plaintiff's high profile case and the risk of harm plaintiff faced and ignored plaintiff's plea for understanding and compassionate placement in a safe and secure housing. Plaintiff cannot understand Defendant Stevensons lack of action and cannot help bu wonder if he somehow was encouraging or waiting in anticipation for the violent acts to occur. Later other guards
defendant
like Aysa made comments about plaintiff having a "special cell" waiting which indicated defendant Stevenson was not the only one anticipating and perhaps even encouraging the violent acts and harm plaintiff experienced. With adequate investigation which other guards, staff, and perhaps even administration officials could be found who were also awaiting, perhaps encouraging, and anticipating harm to such a high profile plaintiff? At a later time Corporal Gabba stopped by plaintiff's cell and saw plaintiff on the TV show Court Cam and then went and spoke to Lt. Stevenson about it and Christopher Gonzales being on the same unit as plaintiff and threatening plaintiff repeatedly. Gabba also talked to Stevenson about Gonzales threatening plaintiff in the chow hall. Defendant Stevenson did nothing to mitigate the volitile situation plaintiff was in, and nothing to prevent the harm done to plaintiff by the stress, harassment, violence, and mental and emotional torture, violation of his constitutional rights, ADA rights, and the rights afforded plaintiff by the very interstate compact agreement he came to OSCI on. Even plaintiffs Fourteenth Amendment right to due process and equal protection was violated by defendant Stevenson, perhaps with the encouragement of other defendants and unknown others.

Defendant Miss Meyer is a Qualified Mental Health Counselor for the Oregon Department of Corrections and is assigned to Oregon State Correctional Institution where she functioned as a mental health counselor for plaintiff. She is legally responsible to provide necessary mental health counseling and address mental health concerns for Oregon State Correctional Institution. Defendant Meyer violated plaintiff's Eighth Amendment rights by allowing cruel and unusual punishment to plaintiff after being made aware by plaintiff and multiple other sources of plaintiff's being in situations harmful to plaintiff's mental, physical, and emotional health. Plaintiff has found no evidence to support defendant complied with any mandatory reporting of the sexual and physical violence towards plaintiff and believes she abrogated her mandatory reporting responsibilities. Defendant also violated plaintiff's Fourteenth Amendment due process rights by failing to follow plaintiff's interstate compact agreement, not taking action in response to plaintiff's pleas for help when his rights were clearly being violated, and allowing plaintiff to suffer grievously during mental health crises without taking action to provide for plaintiff's counseling and mental health needs, and needs for intervention to ensure the violence, harassment, lack of appropriate responses the requests for intervention to other staff and guards, mental health crisis including panic attacks, cell placement inssues, Court Cam TV issue, gang violence and intimidation, ignoring requirements of the interstate compact, ignorance towards ADA violations, and other violations of plaintiff's Constitutional and other rights were remedied, including the need for substance abuse treatment.

Defendant Would is the assignment officer for housing for the Oregon State Correctional Institution and is resonsible to know who is in protective custody and to address atypical and vulnerable needs for plaintiff. Knowing plaintiff is designated protective custody and as atypical vulnerable defendant still placed plaintiff in countless dangerous situations which caused plaintiff extreme emotional,

mental, and physical complications that  include plaintiff being assaulted,
threatened, harassed and more as previously outlined in the complaint, up to
and including needing to be placed on heart medication and  a heart monitor
which showed plaintiff's concernts for his heart to be valid. Defendants lack of
concern and deliberate indifference and certaing negligence in performing her
duties violated plaintiff's Eighth Amendment rights by causing cruel and unusual
punishment and causing physical, emotional harm, and harmed his mental health.
Defendant further violated plaintiff's Fourteen Amendment rights to equal protection
of the law by not following the procedures and protocal of the interstate compact
agreement.

Defendant Ross is a guard for Oregon Deparment of Corrrections and was assined
to the Oregon State Correctional Institution where he held the rank of Captain.
Plaintiff spoke to defendant Ross on countless occasions requesting assistance
with the violations of his rights that plaintiff was experiencing. Additionally,
on 08/31/2023 and 11/30/2023 plaintiff's sister called Defendant Ross to enlist
his assistance but Ross would not ever help. On 06/03/2023 plaintiff wrote a
kite to STM STevens asking "for security to remove channel 33(A&E) off the TV
stations. I have a very "high profile" case an am on the TV every week. People
ha;e attacked me over this I have to be called a rat over and over. I have no
"friends" because of htis. I am extremely depressed and have very bad anxiety
attacks over this. Will you please remove channell #33. STM Lt. Stephenson referred
the matter to Captain Ross who did nothing to address the issue. Plaintiff believes
defendant Ross's lack of action shows negligence and deliberate indifference to
the harm plaintiff was going through while housed at Oregon State Correctional
Institute, and his inaction only served to worsen the harm to the plaintiff.

Just like with the communication between defendants Ross and Stevenson which
on this occasion was documented, significant communication and lack of action between
defendants was not documented but this does not mean it didn't occur and that
the defendants should be allowed to claim ignorance and be found harmless in the
compliant.

Defendant Asay is a guard for the Oregon Department of Corrections who was assigned to the Oregon State Correctional Institution where he held the rank of Captain. In June of 2023 when plaintiff was "in the hole" he spoke with Captain Asay about everthing he was experiencing that was causing him stres and harm at OSCI. Defendant Asay told plaintiff that he could just sit in the hole. Plaintiff asked about goin to Two Rivers where he had previously been placed in protective custody and Asay said Two Rivers was not an option. Asay stated he would talk with Ms. Gates but he doubts plaintiff would be able to go back to Unit-3, the mental health unit at that time. Plaintiff had been told he would be going back to the honor dorm, Unit-11 "asap" but that now there was no room for him there either. Plaintiff spoke with Asay again 08/10/2023 and told him about Gonzoles and his being with gang member and that plaintiff was being threatened. Plaintiff told Asay he was not able to go outside to yard as a result of the threats and fear of being assaulted. Plaintiff continued to talk to Asay until he told him the whole story of the events at OSCI. Plaintiff also told Asay about housing trying to put him a gang member from the Irish Pride gang in plaintiff's cell and that the gang member was going to violently assault plaintiff if he was allowed to move in and Asay did nothing. It was officer Bishop who moved the gang member. Plaintiff also asked Asay if he could move to a cell on the unit that was closer to where the officers were because of his fear of being attacked and the fear that officers would not be able to hear his calls for help as had happened to other AIC's in the past. It has also happened to plaintiff in the past where he has called for help from the far end of the unit ans was not heard and did not get the help he needed to prefvent significant harm. Plaintiff asked numerous officers the same question and was told "no", you will be at the far end of the tier and I will be in the office. The disregard of plaintiff's need for a safe living environment caused him significant physical& emotional harm, worsened his panic attacks and fears, violated his constitutional and ADA rights and the interstate compact agreement. Defendant failed in taking required steps to assist plaintiff.

23

Defendant Jones is a guard for Oregon Department of Corrections who held the rank of Captain and was assigned to the Oregon State Correctional Institution. Defendant Jones also held the title of Operations Coordinator at the Oregon State Correctional Institution. As such Defendant Jones was to know what interstate compact agreement requirements were, what housing and gang issues were in the facility, and how to solve the problems plaintiff presented to him on numerous occasions. Defendant Jones's lack of corrective action means he violated plaintiff's Eighth Amendment rights by allowing cruel and unusual punishment, and plaintiff's Fourteenth Amendment rights to due process and equal access to the law. Defendant also took no action to address issues related to requests for necessary mental health and substance abuse treatments by plaintiff nor any action to address ADA violations and violations of the interstate compact. Defendant Jones inaction significantly contributed to plaintiff's actual harm while housed in the Oregon State Correctional Institution of the Oregon Department of Corrections.

On 10/02/2023 plaintiff filed Grievance #OSCI-2023-10-038 grieving OSCI and administration for the extremely dangerous conditions created at OSCI by the difficultyi communicating with staff and guards during an emergency. "There is no way to get staff attention if there is a "man down" situation. I do not feel this safety issue should be taken lightly. I myself and now taking blood presure pills and wearing a heart monitor. What if I have a heart problem and die! because I can't call for a guard. This situation is extremely unconsititutional." Plaintiff asked for OSCI administration to be placed under investigation for failure to supply AIC's with adequate safety devices and mistreatment of AIC's. Plaintiff asked for "intercoms to be placed in the cells." It took seven or eight days for the grievance to be processed and no response was formulated until 10/11/2023. and the grievance was denied due "to the Department of Corrections Administrative Rule "Grievance Review System" tab #109 located in the legal library or" plaintiff could "kyte your institution Grievance/Discrimination Complaint Coordinator." The response is noted as page 1 of 1 with no signature or author noted.

24

On 10/11/2023 there is a signed response to the grievance from defendant Capt. Jones and a supervisor. The supervisor was to sign and print their name but only signed such that it is difficult to distinguis the name, but it could be J something Wagner. The response says: "You are currently housed in Unit 1, which is an open bar unit. You have the ability to call for help on the tier as there is always a staff member present in the unit. Additionally there are video cameras that are monitored from the Officer station that could be used to signal for assistance." It should be noted that while the signiture is signed and dated 10/11/2023, the OSCI Grievance Office stamped it received 10/12/2023.

Plaintiff appealed the denial of the grievance, Grievance #OSCI-2023-10-038A on 10/14/2023 stating: "Captain Jones is not a qualified medical personell and can not expect my ability to call for help or wave my hands out my bars to signal for help [when I am man down or otherwise unable to summon help. Nor can OSCI expect other AIC's to help me summon help when I am placed on Court Cam TV and on units with active gang members and others who wish me harm and/or actively have tried to hurt plaintiff. On Unit 1-49B plaintiff is at the far end of the unit from the guard station, a room with a door that closes and a noisy ice machine inbetween plaintiff and the guard station. Plaintiff cannot signal guards via the camera system if the guards are not paying close attention to the monitor screens.]

On 10/19/2023 Defendant Joshua Highberger, Superintendent of Oregon State Correct-ional Institution responded to plantiff's appeal, and copied his response to OSCI Grievance Coordinator. Highberger stated: "This letter is in response to your Initial Greivance Appeal, #OSCI-2023-10-038A, in which you expressed concern for not being able to alert staff from your cell is you had an emergent need. I have reviewed your appeal, as well as all prior documentation relating to this grievance. OSCI does not have the same infrastructure as newly built correctional facilities that may have call button in cells. The way we maintain the safety and security of our facility is by in person checks. Staff are routinely walking the

housing units/tiers with the intent to ensure everyone is safe. Staff are trained to look into cells and assess any issues they see. Thank you for addressing your concerns appropriately."

Plaintiff appealed defendant Highberger's response as follows: "I do not agree with J| Highberger's response. I do not believe he has the education to make the decision on the infrastructure of the facility. They have just installed new cmeras and a new system to control the locking mechanism on the cell doors. They have run conduit all over the facility for security reasons but refuse safety concerns it seems. I have went long periods of time without guard walking by. (log book will note not much cameras). If I myself were to have a heart attack the first house is the most critical, it is the "Golden house" so even if officers did their hourly walk it would still be unsafe. I do not believe that J. Highberger's response is safe.As superintendent he should always seek the betterment and safety of the AIC's. It is not safe for OSCI to not have a way for AIC's to communicate safety concerns from the cell." Again plaintiff asks: "I want OSCI administration placedunder investigation for failure to supply AIC's with adequate safety devices and mistreatment of AIC's. I want intercoms placed in cells."

On 11/02/2023 Ken Jeske, Westside Institutions Administrator, Oregon Department of Corrections Operations Division responded to plaintiffs appeal. Defendant Jeske stated: "This letter is in response to your Final Grievance Appeal, #OSCI_2023_ 10_083AA, in which you suggest you are not safe in your living unit at OSCI due to not intercom/alert system. I have reviewed your appeal, and I concur with the response you received from Superintendent Highberger. You have not provided any additional information in this appeal that would warrant a response other than that which you have already received. Thank you for addressing your concerns appropriately. This concludes the grievance review process for this matter. Sincerely, Ken Jeske." cc: R. Persson, Asst. Directof of Operations; J| Highberger, OSCI Superintendent; OSCI Grievance Coordinator; File. The response is stamped "REceived Nov 3 2023 OSCI Grievance Office.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

The plaintiff has exhausted his administrative remedies with respect to all claims and all defendants.

CLAIMS FOR RELIEF

The actions of all defendants in failing to intervene to prevent violation of the interstate compact agreement constituted deliberate indifference to plaintiff's safety, mental health and substance abuse treatment needs, and denied plaintiff's rights to care under the ADA and constitutes deliberate indifference to the plaintiff's serious mental health and medical needs in violation of the Eighth Amendment to the United States Constitution.

The failure of defendants to take disciplinary or other action to curb the known pattern of physical abuse of plaintiff by AIC's and guards constitutes deliberate indifference to the plaintiff's safety and contributed to and proximately caused the above-described violations of Eight Amendment rights and assault and battery.

The indecent assault by defendant Alves, the menacing and threatening acts at other times, the retaliation by use of defendant Alves indecent and sexualized stip search and sexual comments immediately after plaintiff grieved Superintendent Highberger, and the lack of intervention and corrective action by adminstration against defendant Alves were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution, and denied plaintiff's due process of law in violation of the Fourteenth Amendment to the United States Constitution, and as a disabled person denied plaintiff's rights under the Americans With Disabilities Act, and also violated the rights of plaintiff under the Interstate Compact Agreeement the State of Montana made with the State of Oregon and assault and battery.

The actions of defendants to deny plaintiff the mental health treatment and substance abuse treatment and their failure to take action to repair the

known breach of contract with the sending state of Montan in favor of the contract
and palintiff's obvious treatment needs, the alteration of palintiff's mental health
diagnoses by the receiving state of Oregon's mental health administrators and the
ignoring of these violations by administration and providers, the lack of assistance
from guards and unit staff in seeking to assist plaintiff in getting the obvious
crisis and ongoing mental health and substance abuse treatment needed constituted
deliberate indifference to plaintiff's needs, and the ongoing needs of plaintiff
to be heard when reporting severe anxiety symptoms and symptoms of PTSD which
contributed to the acute safety and security needs, were done maliciously and
sadistically and with deliberate indifference to the plaintiff's safety and security
and treatment needs and constituted,and contributed to and proximately caused the
denial of plaintiff's due process rights of law in violation of the Fourteenth
Amendment of the United States Constitution, and constituted cruel and unusual
punishment in violation of the Eighth Amendment of the United States Constitution,
and violated plainmntiff's rights uder the American's With Disabilities Act, and
violated plaintiff's Interstate Compact Agreement between the sending state of
Montana and the receiving state of Oregon.

    The plaintiff has no plain, adequate, or complete remedy at law to redress
the wrongs described herein. Plaintiff has been and will continue to be irreparably
injured by the conduct of hte defendants unless this court grants the declaratory
and injunctive relief which plaintiff seeks.

PRAYER FOR RELIEF

    WHEREFORE, Plaintiff respectfully prays that this court enter judgment
granting plaintiff:

    A declaration tha the acts and omissions described herein violated plaintiff's
rights under the Constitution and laws of the United States, and the Americans
With Disabilities Act of the United States.

Issue a preliminary and permanent injunction ordering defendants Oregon Department Of Corrections to cover any and all costs of comprehensive psychological and psychiatric evaluations by providers of plaintiff's choice an in their normal place of business, and to cover any and all costs of comprehensive and intensive short and long term mental health treatment and substance and alcohol treatment by the providers of plaintiff's choice and at the facility and location of plaintiff's choice.

Compensatory damages of $10 million, and punitive damages of $5 million against Defendant Marcia G. Ventura.

Compensatory damages in the amount of $20 million, and punitive damages in the amount of $10 million against Defendant Christy Hutson.

Compensatory damages in the amount of $20 million,  and punitive damages in the amount of $10 million against Seargent Alves, Defendant.

Compensatory damages in the amount of $15 million, and punitive damages in the amount of $10 million against Defendant Kristine Gates.

Compensatory damages in the amount of $30 million, and punitive damages in the amount of $20 million against Defendant J. Highberger.

Compensatory damages in the amount of $10 million, and punitive damages in the amount of $5 million against Defendant R. Corrigan.

Compensatory damages in the amount of $12 million, and punitive damages in the amount of $7 million against Defendant STM Stevenson.

Compensatory damages in the amount of $10 million, and punitive damages in the amount of $5 million against Defendant Would.

Compensatory damages in the amount of $10 million, and punitive damages in the amount of $5 million against Defendant Ms. Myer.

Compensatory damages in the amount of $10 million, and punitive damages in the amount of $5 million against Defendant Ross.

Compensatory damages of $5 million, and punitive damages in the amount of $2 million against defendant Aysa.

Compensatory damages in the amount of $50 million dollars, and punitive damages in the amount of $25 million dollars against Defedant Oregon Department Of Corrections.

A jury trial on all issues triable by jury.

Plaintiff's costs in this suit.

Any additional relief this court deems just, proper, and equitable.

8-1-2024
_____
Dated

signature
Plaintiff, Pro Se
Jonathon Carter, AO#3026126


STATE OF MONTANA    )
                    )  SS: AFFIRMATION
COUNTY OF POWELL    )

I, the undersigned, do hereby swear or affirm under the penalties of perjury, that the foregoing statements are true and correct.

8-1-2024
_____
Dated

signature
Plaintiff, Pro Se
Jonathon Carter, AO #3026126
700 Conley Lake Road
Deer Lodge, MT  59722

Carter Jonathon
3026126
700 Conley LK, Rd
Deer lodge, MT
59722

11.82

MONTANA STATE
PRISON

neopost
08/13/2024
US POSTAGE $011.82

ZIP 59722
041L11204944

Clerk OF Court
Mark O. Hatfield
U.S. Courthouse, 1000 S.W. Third Ave.
Portland, OR 97204

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
**CERTIFIED MAIL**

7019 1640 0000 1621 4800

UNITED STATES
POSTAL SERVICE

US TRACKING #

9114 9999 4423 8808 6181 97

Legal

Legal