UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JONATHAN CARTER,            Case No. 6:23-cv-01664-CL

    Plaintiff,                 ORDER

    v.

J. HIGHBERGER *et al.*,

    Defendants.

___

AIKEN, District Judge.

    Plaintiff Jonathan Carter ("Carter"), a self-represented litigant in custody at Oregon State Correctional Institution ("OSCI") at the time of filing, brings this civil rights action pursuant to 42 U.S.C. § 1983. Presently before the Court are Carter's motions for leave to file an amended complaint (ECF No.105, 122, 131 ("Mots. to Amend")) and motions for temporary restraining order ("TRO") or preliminary injunction (ECF No. 102, 106, 123 ("Mots. for TRO/PI")). For the reasons stated herein, the Court DENIES the motions.

## BACKGROUND

    Carter is presently incarcerated after he was convicted of criminal offenses in Montana. Although Carter began serving his sentence in the custody of the Montana Department of

1– ORDER

Corrections ("MDOC") in 2019, safety concerns ultimately required Carter's transfer out of state. Carter thus was placed in the custody of the Oregon Department of Corrections ("ODOC") at OSCI pursuant to the Interstate Compact.[1]

Carter filed this lawsuit challenging various conditions of his confinement at OSCI on November 13, 2023, while in ODOC custody. (*See generally* ECF No. 2.) Shortly after filing the original complaint, Carter moved for a preliminary injunction requesting, among other things, his transfer back to MDOC custody. (ECF No. 5.) The Court denied that motion as moot (ECF No. 48) after Carter was returned to MDOC custody and transferred to Montana State Prison ("MSP") on January 28, 2024. *See* Montana Offender Search for Jonathon Carter, MONTANA DEPARTMENT OF CORRECTIONS, https://app.mt.gov/conweb/; *see also Callister v. Owen*, No. 1:16-cv-00474-CWD, 2017 WL 1499224, at *2 (D. Idaho Apr. 25, 2017) (explaining that judicial notice may be taken of "[p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (simplified).

On February 27, 2025, the Court granted Carter leave to file an amended complaint. (ECF No. 52.) After several delays, Carter filed an amended complaint, which is now the operative pleading, on August 19, 2024. Carter alleges in the amended complaint that numerous ODOC officials violated the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and the Americans with Disabilities Act ("ADA") by failing to protect Carter from violent individuals in custody, failing to provide adequate mental health treatment, subjecting him to sexual harassment, retaliating against him, failing to properly respond to his

---

[1] It is unclear from the record whether Carter was transferred to Oregon pursuant to the Interstate Corrections Compact, codified at OR. REV. STAT. § 421.245, or the Western Interstate Corrections Compact, codified at OR. REV. STAT. § 421.284.

2– ORDER

grievances, and violating the interstate compact in several respects. (*See* ECF No. 83.) Defendants filed an answer on November 4, 2024. (ECF No. 96.)

Carter thereafter filed a flurry of motions, which included multiple requests for the appointment of pro bono counsel, various discovery challenges, several requests for a TRO or preliminary injunction, and multiple requests for leave to file an amended complaint. Magistrate Judge Mark Clarke addressed many of Carter's motions during a telephonic status conference on February 20, 2025 (*see* ECF No. 135), but referred the motions for leave to file an amended complaint and for preliminary injunction to the undersigned for resolution. Defendants oppose the motions.

## DISCUSSION

I.  Motions to Amend

In his motions to amend, Carter seeks to add claims against three MDOC officials: Jim Salmonsen, the MSP warden; Brian Gutker, the MDOC director; and Greg Gioforte, whose role with MDOC is not disclosed (together, "proposed Montana Defendants"). Carter did not submit with any of his motions a proposed amended complaint, but he alleges that he "has countless documents showing a continuing harm . . . over a long duration of time and the negl[igence] of the M.D.O.C. and those that govern it[,]" and insists that the proposed Montana Defendants must be added as defendants to this lawsuit because they "created the compact agreement" and "should be held account[able] for their role in the wrongs against [Carter] while at O.S.C.I." (*See* Mots. to Amend.)

Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." The court should "freely" give leave to amend "when justice so requires," FED. R. CIV. P 15(a)(2), and a motion to

3– ORDER

amend "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party[,]" *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

To the extent Carter seeks to amend his pleading to add claims against the proposed Montana Defendants arising out of his confinement in Montana before or after his time in custody at OSCI, such amendments are futile. Such claims belong in a separate lawsuit because they are distinct from the claims raised against in the amended complaint, and concern parties over which the Court lacks jurisdiction. *See Int'l Shoe Co. v. State of Wash., Off. of Unemp. Comp. and Placement*, 326 U.S. 310, 316 (1945) (a court lacks personal jurisdiction over a nonresident defendant unless that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice"); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [suits involving multiple claims and defendants] produce, but also to ensure that [individuals in custody] pay the required filing fees"); (*Reed v. Newsom*, No. 3:20-cv-2439-AJB-MDD, 2021 WL 2633634, at *6 (S.D. Cal. June 25, 2021) ("Because Plaintiff has joined unrelated claims from myriad alleged incidents at different prisons against different defendants, the Complaint must be dismissed").

To the extent Carter seeks to amend his pleading to add claims against the proposed Montana Defendants for "creating the compact agreement" and transferring Carter to OSCI, such amendments also are futile. It is well established that an individual in custody has no constitutional right to be incarcerated in a particular institution or housing unit, or to avoid being transferred from one facility to another. *Meachum v. Fano*, 427 U.S. 215, 224-28 (1976); *see*

4– ORDER

also *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (explaining that "[a]n inmate's liberty interests are sufficiently extinguished by his conviction so that the state may change his place of confinement even though the degree of confinement may be different and prison life may be more disagreeable at one institution than in another"). In addition, state officials' violation of an interstate compact that "sets forth procedures governing the interstate transfer of state prisoners, and . . . ensures that such prisoners maintain certain rights provided by the sending state," cannot serve as a basis for a Section 1983 claim because it is not "federal law." *Ghana v. Pearce*, 159 F.3d 1206, 1207-09 (9th Cir. 1998); *see also Little v. Brown*, No. 2:14-cv-1964 CKD P., 2014 WL 4661942, at *3 (E.D. Cal. Sept. 18, 2014) (holding that that the plaintiff failed to state a cognizable Section 1983 claim where he alleged that his transfer from California to Oklahoma violated his constitutional rights because it resulted in various hardships at the receiving prison). Although Carter asserts that the proposed Montana Defendants bear ultimate responsibility for the conduct of numerous ODOC officials, such vague and conclusory allegations are insufficient to establish liability under Section 1983. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (explaining that "[v]ague and conclusory allegations of official participation in civil rights violations" are not sufficient to establish supervisory liability under Section 1983). Accordingly, the Court denies Carter's motions to amend.

II.     Motions for TRO/Preliminary Injunction

Carter's motions for injunctive relief target MDOC officials, policies, and procedures that have allegedly hampered Carter's efforts to litigate this case or otherwise violated his constitutional rights since his return to MSP. Carter seeks court orders requiring MDOC officials to provide him with preferential housing, mental health treatment, a program tailored to his "rehabilitation needs," access to an "ADA laptop" loaded with Oregon statutory law and this

5– ORDER

Court's local rules, unfettered communication with individuals in custody in Oregon, and modified procedures for processing Carter's legal mail (*see* Mots. for TRO/PI).

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the defendant is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). To establish entitlement to a preliminary injunction, a plaintiff generally is required to demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The standard for granting a temporary restraining order is "substantially identical" to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). Where an individual in custody seeks a preliminary injunction or temporary restraining order with respect to prison conditions, such relief, if granted, "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Where, as here, a plaintiff seeks to enjoin individuals who are not defendants to the underlying lawsuit, a court may issue an injunction against non-parties only if they act "in active concert or participation with" an enjoined party. FED. R. CIV. P. 65(d)(2); *see also Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) (explaining that "[a] federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim" but "may not attempt to determine the rights of persons not before the court"). The plaintiff also must establish that there is "a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). Absent "a sufficient nexus between the

6– ORDER

claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint[,]" a district court "lacks authority to grant the relief requested." *Id.*

Carter seeks to enjoin MDOC officials, non-parties to this action, with respect to the conditions of Carter's confinement at MSP. Carter does not plausibly allege that any MDOC official worked in active concert with any enjoined party to this action, and the relief Carter seeks is unrelated to the claims asserted in the amended complaint. Although Carter alleges that various issues at MSP are preventing him from effectively litigating this case, those allegations concern consequences arising from the allegedly unconstitutional conditions of Carter's current confinement at MSP and do not establish a "sufficient nexus" to the separate constitutional violations that allegedly occurred at OSCI while Carter was in ODOC custody as detailed in the amended complaint. *See, e.g.*, *Franklin v. Nevada*, No. 3:23-cv-00291-ART-CSD, 2025 WL 448688, at *4-5 (D. Nev. Jan. 15, 2025) (holding that the plaintiff's request for injunctive relief lacked a sufficient nexus where the events underlying the motion for injunctive relief "occur[red] after the events in the complaint, in a different facility[,]" and were "distinct from the claims" in the complaint); *Silva v. Stogner*, No. 3:20-cv-00027-ART-CSD, 2023 WL 6973697, at *2 (D. Nev. Oct. 23, 2023) (explaining that "[a]lthough [the plaintiff]'s claim bears *some* relationship to his TRO motion, in that he claims that prison officials are retaliating against him by obstructing his ability to litigate this case, this allegedly retaliatory conduct involves different officials and different conduct than his underlying claims" (emphasis in original)). The Court therefore cannot grant the injunctive relief Carter seeks and must deny his motions. *See Pac. Radiation Oncology*, 810 F.3d at 637 (affirming denial of TRO because the plaintiff's motion for injunctive relief was unrelated to its underlying complaint).

///

7– ORDER

CONCLUSION

For the reasons stated, the Court DENIES Carter's Motions for Leave to Amend Complaint (ECF Nos. 105, 122, 131) and Motions for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 102, 106, 123).

IT IS SO ORDERED.

DATED this 12th day of March, 2025.

/s/Ann Aiken
Ann Aiken
United States District Judge

8– ORDER